UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:15-CR-113-TBR

UNITED STATES OF AMERICA                                                                PLAINTIFF

v.

ALANDO SUBLETT                                                                           DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court upon Defendant Alando Sublett's Motion for Compassionate Release in Light of COVID-19, [DN 45], and Motion to Appoint Counsel, [DN 56]. The Government has filed a response. [DN 51]. This matter is ripe for adjudication. For the reasons stated herein, Defendant's Motion for Compassionate Release in Light of COVID-19, [DN 54], is **DENIED** and Defendant's Motion to Appoint Counsel, [DN 56], is **DENIED AS MOOT**.

**BACKGROUND**

Defendant sold heroin, cocaine base ("crack" cocaine), and a shotgun to an ATF confidential informant over the course of three controlled transactions between September 16, 2014 and November 7, 2014. [DN 51 at 1; DN 39 at 8]. On November 28, 2016, Defendant pled guilty to charges of drug trafficking and unlawful transport of a firearm. [DN 42]. Because of his two prior drug convictions, Defendant qualified as a Career Offender and Defendant's Sentencing

Guideline range increased from 84–105 months to 188–235 months; his criminal history category was increased from V to VI; and his total offense level was 31. [DN 43 at 230]. The Court granted Defendant's motion for a downward variance and on June 20, 2017, sentenced Defendant to a 120-month term of imprisonment and five years of supervised release.[1] [*Id.* at 232]. Currently, Defendant has served less than half of his 120-month sentence. In the instant Motion, Defendant argues the presence of COVID-19 at FCI Fort Dix in Fort Dix, New Jersey and his pre-existing medical conditions including diabetes, obesity, hypertension (high blood pressure), and high cholesterol are "extraordinary and compelling reasons" under the First Step Act that warrant his release. [DN 45 at 239].

## LEGAL STANDARD

"The court may not modify a term of imprisonment once it has been imposed except that-
  (1) in any case—

  (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

  (i) extraordinary and compelling reasons warrant such a reduction"

---

[1] DN 43 at 232 (Statement of Reasons) ("The Defendant had a tough life but that the criteria in § 3553(a) are not in his favor. The Court has no doubt the Defendant qualifies as a career offender, but the Court is also not a fan of the career offender application because of the large jump in offense level. In this case, the guideline for imprisonment goes from 84–105 months prior to its application and up to 188–235 months after application. Because of this large jump based upon two convictions for which have already been accounted for in the guideline calculation and the Defendant has already received punishment for, the Court indicates 188 months custody is greater than necessary to comply with the sentencing factors.")

18 U.S.C.A. § 3582(c)(1)(A). "The First Step Act modified the statute concerning the compassionate release of federal prisoners, 18 U.S.C. § 3852, such that district courts may entertain motions filed by incarcerated defendants seeking to reduce their sentences." *United States of America v. D-1 Duwane Hayes*, No. 16-20491, 2020 WL 7767946, at *1 (E.D. Mich. Dec. 30, 2020) (citing *United States v. Jones*, 980 F.3d 1098, 1100 (6th Cir. 2020)). "Now, an imprisoned person may file a motion for compassionate release after (1) exhausting the BOP's administrative process; or (2) thirty days after the warden received the compassionate release request—whichever is earlier." *Jones*, 980 F.3d at 1105 (citing First Step Act of 2018, Pub. L. 115-391, Title VI, § 603(b), 132 Stat. 5194, 5239; 18 U.S.C. § 3582(c)(1)(A) (2020)).

In considering a compassionate release motion under 18 U.S.C. § 3582(c)(1)(A), a district court shall engage in a "three-step inquiry." *United States v. Elias*, No. 20-3654, 2021 WL 50169, at *1 (6th Cir. Jan. 6, 2021) (citing *Jones*, 980 F.3d at 1101). First, "the court must 'find' that 'extraordinary and compelling reasons warrant a sentence reduction.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Second, the court must "ensure 'that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.'" *Id.* (citing *Jones*, 980 F.3d at 1101). Although the Sentencing Commission's policy statement on reductions in terms of imprisonment under 18 U.S.C. § 3582(c)(1)(A) is recited at U.S.S.G. § 1B1.13, "the Commission has not updated § 1B1.13 since the First Step Act's passage in December 2018 . . . [and] the policy statement does not wholly survive the First Step Act's promulgation." *Jones*, 980 F.3d at 1109 (citing U.S.S.G. § 1B1.13 (U.S. Sent'g Comm'n 2018)).

Consequently, the Sixth Circuit in *Jones* decided that "[u]ntil the Sentencing Commission updates § 1B1.13 to reflect the First Step Act, U.S. Sentencing Guideline § 1B1.13 is no longer an "applicable" policy statement in cases where an incarcerated person, as opposed to the Director

of the Bureau of Prisons, files his or her own compassionate release motion in district court. *Jones*, 980 F.3d at 1109. Accordingly, district courts "may skip step two of the § 3582(c)(1)(A) inquiry" and have "full discretion . . . to determine whether an 'extraordinary and compelling' reason justifies compassionate release when an imprisoned person files a § 3582(c)(1)(A) motion." *Id.* at 1109, 1111. Thus, for now, district courts need not ensure that their ideas of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) are consistent with the Sentencing Commission's idea of extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A) as currently reflected at U.S.S.G. § 1B1.13.

Despite the Sixth Circuit's holding in *Jones*, this Court agrees with the United States District Court for the Eastern District of Kentucky in stating that "[w]hile the policy statement found in U.S.S.G. § 1B.13 of the Sentencing Guidelines is not binding, it provides a useful starting point to determine whether extraordinary and compelling reasons exist." *United States v. Muncy*, No. 6: 07-090-DCR, 2020 WL 7774903, at *1 (E.D. Ky. Dec. 30, 2020). Congress provided no statutory definition of "extraordinary and compelling reasons" in section 3582(c)(1)(A). *United States v. Ruffin*, 978 F.3d 1000, 1004 (6th Cir. 2020). Instead, Congress directed the United States Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." *United States v. Adkins*, No. 5:18-058-DCR, 2020 WL 7755629, at *1 (E.D. Ky. Dec. 29, 2020) (quoting 28 U.S.C. § 994(t)). Those descriptions are found in § 1B1.13 of the United States Sentencing Guidelines (policy statement) and the application notes to that section.

This policy statement describes four categories of extraordinary and compelling reasons. The first three relate to an inmate's serious medical conditions, age, and status as a caregiver. U.S.S.G. § 1B1.13, cmt. n.1(A)–(C). Specific medical conditions of a defendant constituting

extraordinary and compelling reasons for a reduction in terms of imprisonment may include "terminal illness," "a serious physical or medical condition," "a serious functional or cognitive impairment," or "deteriorating physical or mental health because of the aging process." *Id.* The application note to U.S.S.G. § 1B1.13 further provides that the age of a defendant may be a necessary and compelling reason for a reduction in terms of imprisonment when "[t]he defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* The last category is a catch-all provision titled "Other Reasons," which reads: "As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* § 1B1.13, cmt. n.1(D).

After considering whether extraordinary and compelling reasons warrant a sentence reduction and whether such a reduction is consistent with applicable policy statements issued by the Sentencing Commission, the district court proceeds to the third and final step of the analysis. If a sentence reduction is warranted under steps one and two, at step three, the court is to consider whether that reduction is defensible under the circumstances of the case by considering all relevant sentencing factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A)); *Elias*, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1101); *Jones*, 980 F.3d at 1108.

## DISCUSSION

### I. Exhaustion of Administrative Remedies

"Federal law has long authorized courts to reduce the sentences of federal prisoners facing extraordinary health conditions and other serious hardships, but only under very limited circumstances." *United States v. Beck*, --- F.Supp.3d. ----, No. 1:13-CR-186-6, 2019 WL 2716505,

at *4 (M.D.N.C. June 28, 2019). Under the First Step Act, courts are now permitted to "consider motions by defendants for compassionate release without a motion" by the BOP Director "so long as the defendant has asked the Director to bring such a motion and the Director fails to or refuses." *United States v. Marshall*, No. 3:19-CR-00004-JHM, 2020 WL 114437, at *1 (W.D. Ky. Jan. 9, 2020).

On June 14, 2020, Defendant filed a request for Compassionate Release with the Bureau of Prisons, arguing that his underlying medical conditions put him at a higher risk for complications from COVID-19. [DN 45 at 258]. Defendant's request was sent to the RIS Coordinator, who instructed Defendant to re-submit his request under "one specific category, as well as a detailed release plan." [DN 45-3 at 258]. Subsequently, on July 26, 2020, Defendant re-submitted his request with additional information regarding his release plan and medical condition. [DN 45-4 at 260]. As of the date Defendant filed the instant motion, September 21, 2020, more than thirty (30) days had lapsed since the Warden's receipt of Defendant's request. The government acknowledged these events in its response and did not object to the exhaustion requirement. [DN 51 at 2]. Thus, the Court finds Defendant has properly exhausted his administrative remedies under the First Step Act.

## II. Extraordinary and Compelling Reasons

Where, as here, an incarcerated person files a motion for compassionate release directly, the district judge may skip step two of the § 3582(c)(1)(A) inquiry and has full discretion to define and determine whether an "extraordinary and compelling" reasons exists on his own initiative, without consulting the policy statement § 1B1.13. *Elias*, No. 20-3654, 2021 WL 50169, at *1 (citing *Jones*, 980 F.3d at 1111). Though the Court agrees that the policy statement still provides a useful starting point to determine whether extraordinary and compelling reasons exist, the Court

can and does look to other reasons when ruling on a motion for compassionate release. The present motion represents many filed by incarcerated persons around the country who have limited control of their environment, often cannot practice social distancing, and are concerned about contracting COVID-19. The Sixth Circuit acknowledged this concern and approved the following two-part test "for deciding when the concern of contracting COVID-19 becomes an extraordinary and compelling reason for compassionate release: (1) when the defendant is at a high risk of having complications from COVID-19 and (2) the prison where the defendant is held has a severe COVID-19 outbreak." *Elias*, 984 F.3d at 520 (quoting *United States v. Hardin*, No. 19-CR-240, 2020 WL 2610736, at *4 (N.D. Ohio May 22, 2020) (internal quotation marks omitted)).

Here, the Court finds that the risk posed to Defendant from his medical conditions compounded by the presence of COVID-19 at FCI Fort Dix constitute such a reason, but ultimately compassionate release is not warranted under 18 U.S.C. § 3553(a).

In support of his motion, Defendant argues the presence of COVID-19 at FCI Fort Dix in Fort Dix, New Jersey and his pre-existing medical conditions including diabetes, obesity, hypertension (high blood pressure), and high cholesterol are extraordinary and compelling reasons for his release. [DN 45 at 239]. In a subsequent letter to the Court, dated November 1, 2020, Defendant highlights how the presence of COVID-19 at FCI Fort Dix is exacerbated by crowded conditions, which make effective "social distancing" nearly impossible. [DN 54].

**(1) Defendant's Medical Conditions**

Defendant's BOP medical records confirm that Defendant is a 42-year-old African American male who suffers from Type II Diabetes Mellitus, hypertension (high blood pressure), hyperlipidemia (high cholesterol), and obesity. [*See* DN 53]. The Centers for Disease Control has

stated that those with diabetes are at an increased risk of severe illness from COVID-19.[2] Those with high blood pressure may be at an increased risk.[3] The more underlying medical conditions someone has, the greater their risk is for severe illness from COVID-19.[4] Though Defendant has stated that he is taking medications for his conditions, research and guidance from the CDC clearly shows that Defendant is at a greater risk due to these conditions. [DN 45 at 239]. Additionally, in *Jones*, the court of appeals noted that a prisoner may establish "extraordinary and compelling reasons" warranting early release either where he "has COVID-19 (because [the inmate] may suffer from serious long-term health problems and potentially may require treatment that he cannot receive [while in custody] ), or where he does *not* have COVID-19 (because [other] medical issues put him at risk of contracting the virus)." *United States v. White*, No. 18-20183, 2020 WL 7240904, at *2 (E.D. Mich. Dec. 9, 2020) (quoting *Jones,* 980 F.3d at 1102, n.6).

Hypertension, Diabetes, and Hyperlipidemia (high cholesterol) are listed as the three most common comorbidities among COVID-19 related fatalities.[5] Additionally, the CDC lists obesity and diabetes as the two most common comorbidities among Defendant's age group, 35–44 years.[6] Defendant's medical records show that he is "obese" according to CDC guidelines. The most recent medical records reflecting Defendant's height and weight are from October 2019. [DN 53 at 304]. Defendant is listed as five feet, nine inches tall weighing 240 pounds—"which is 71

---

[2] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html?CDC_AA_refVal=https% 3A% 2F% 2Fwww.cdc.gov% 2Fcoronavirus% 2F2019-ncov% 2Fspecific-groups% 2Fhigh-risk-complications.html.
[3] *Id.*
[4] *People with Certain Medical Conditions,* CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#diabetes (last updated Dec. 29, 2020).
[5] *COVID-19 Tracker*, New York State Department of Health, https://covid19tracker.health.ny.gov/views/NYS-COVID19-Tracker/NYSDOHCOVID-19Tracker-Fatalities?%3Aembed=yes&%3Atoolbar=no&%3Atabs=n (last updated Jan. 10, 2021).
[6] *Weekly Updates by Select Demographic and Geographic Characteristics: Comorbidities,* CDC, https://www.cdc.gov/nchs/nvss/vsrr/covid_weekly/index.htm#Comorbidities (last updated Jan. 6, 2021).

pounds over the recommended weight range" of 129–169 pounds—resulting in a body mass index (BMI) of "35.4 kg/m2." *Id.* The CDC's guidelines advise that individuals who are obese (BMI of 30 or above) are among those with the "strongest and most consistent evidence" of severe illness from COVID-19.[7]

Moreover, statistically speaking, Defendant's race and age put him at a higher risk of serious illness from COVID-19 than other populations, even though his age does not place him in the most vulnerable age category. The CDC website states that individuals aged 40–49 are 3x more likely to be hospitalized and 10x more likely to die from COVID-19 compared to an 18–29-year-old. *See Centers for Disease Control and Prevention, Rate Ratios Compared to 18–29 Year Olds* (Aug. 18, 2020), https://perma.cc/URL5-CLCP. Further, the website states that when compared to Non-Hispanic whites, African Americans are 2.6x more likely to contract COVID-19, 4.7x more likely to be hospitalized from COVID-19, and 2.1x more likely to die from COVID-19. *See COVID-19 Hospitalization and Death by Race/Ethnicity*, CDC (Aug. 18, 2020), https://perma.cc/C95Q-JRNA.

Since filing his initial motion, Defendant has tested positive for the coronavirus. [DN 60]. According to records, Defendant "entered exposure quarantine" on December 22, 2020 after being exposed to COVID-19. [DN 65 at 5]. On December 31, 2020, Defendant was placed in isolation after he tested positive for COVID-19. [DN 63; DN 65 at 4]. He denied having any symptoms. [DN 65 at 3–5]. As of January 1, 2021, Defendant was still not experiencing symptoms and was deemed to no longer need daily medical assessments. On January 21, 2021, Defendant was cleared to return to work in food service. [DN 65-2].

---

[7] *Scientific Evidence for Conditions that Increase Risk of Severe Illness*, CDC (Nov. 2, 2020), https://bit.ly/34aDRY6.

The Court notes that there is no indication that Defendant has not been able to receive care or that his diabetes, hypertension, and high cholesterol are not being managed. Defendant's medical records show that the BOP has made significant efforts to provide meaningful care for Defendant, and FCI Fort Dix is equipped to meet his needs for his medical conditions. *See generally* [DN 53]. Moreover, the BOP has care levels of 1–4, with level 4 requiring the most need. The BOP report indicates Defendant has a medical care level of 2 and is listed as stable with care for high blood pressure, migraines, vision issues, a bullet in his lower back, and borderline diabetes. [DN 59] As a care level 2 inmate, Defendant typically sees a physician twice a year to manage his conditions and medications. [*Id.*]

**(2) Conditions at Fort Dix**

Defendant is currently being housed at FCI Fort Dix in Fort Dix, NJ, which, during the week of January 6, 2021, had nearly 800 confirmed cases, and was dubbed "the epicenter of the virus in the federal prison system." Joe Atmonavage, *'Absolute chaos and terrifying.' The coronavirus is running rampant through N.J. prison again*, NJ.COM (last updated Jan. 6, 2021), https://www.nj.com/news/2021/01/absolute-chaos-and-terrifying-the-coronavirus-is-running-rampant-through-nj-prison-again.html. The Court acknowledges with concern that the incidence of COVID-19 at FCI Fort Dix increased at an alarming rate since the government filed its response to Defendant's motion on November 5, 2020. In January, the prison experienced a seemingly uncontrolled outbreak with the situation characterized as a "rapidly escalating crisis." Samantha Melamed, *COVID-19 outbreak infecting hundreds at Fort Dix is 'escalating crisis,' N.J. senators warn*, THE PHILADELPHIA INQUIRER (Nov. 10, 2020) https://www.inquirer.com/news/fci-fort-dix-coronavirus-covid-outbreak-transfers-elkton-cory-booker-bob-menendez-20201110.html. On December 8, 2020, twelve New Jersey lawmakers, including U.S. Senators Robert Menendez and

Cory A. Booker, submitted a letter to BOP Director Michael Carvajal expressing *"serious concerns regarding the Bureau of Prison's [ ] response to the ongoing COVID-19 outbreak at FCI Fort Dix." United States v. Tazewell*, No. 07-cr-1035 (RMB), 2021 WL 21980, at *3 (S.D.N.Y Jan. 3, 2021) (quoting "Menendez, Booker, NJ Delegation Renew Call to Halt Transfers to Fort Dix Amidst Continuing COVID-19 Outbreak," https://www.menendez.senate.gov/ (emphasis added)).

As of March 4, 2021, FCI Fort Dix had 2,725 total inmates (2,559 at FCI and 166 and the Camp). There were 41 inmates and 39 staff members with confirmed active cases of COVID-29.[8] The BOP reports that one inmate has died and 1795 have recovered. There is been a notable decrease in the number of positive inmate cases since the week of February 25, 2021, when there were 192 inmates and 38 staff members with confirmed active cases.[9] The Court recognizes that there has been substantial COVID-19 outbreak at FCI Fort Dix with the number of active inmate cases peaking at nearly 800 during the week of January 6. Fortunately, as of January 19, the number of active inmate cases decreased by more than 600 with the BOP reporting approximately 180 positive inmate cases. During the week of February 4, 2021, the number of active inmate cases increased to 210 and the BOP reported that one inmate died from COVID-19 and 1460 inmates had recovered.[10] Throughout the month of February, the number of active inmate cases at Fort Dix largely remained in the one-hundreds, with the BOP reporting 192 active inmate cases on February 25, 2021. However, during the first week of March, the number of active cases decreased by over one hundred, with the BOP reporting 41 cases on March 4. It should also be noted that FCI Fort Dix is the largest BOP facility.

---

[8] https://www.bop.gov/coronavirus/ (accessed by the Court on March 4, 2021).
[9] https://www.bop.gov/coronavirus/ (accessed by the Court on February 25, 2021).
[10] https://www.bop.gov/locations/institutions/ftd/ (accessed by the Court on February 4, 2021).

Based on relevant CDC guidelines and a review of Defendant's medical history, the Court agrees that the presence of COVID-19 at FCI Fort Dix, Defendant's Type II Diabetes and hypertension put him at an increased risk of severe illness from COVID-19. The Court recognizes that as a result of the COVID-19 pandemic, these underlying medical conditions are "extraordinary and compelling" reasons for purposes of § 3582(c). In some earlier prior decisions involving FCI Fort Dix other courts have found that extraordinary and compelling reasons exist. In *United States v. Zoquier-Solano*, 2020 WL 6193859 (S.D.N.Y. Aug. 10, 2020), the court found that the defendant, "a 42-year-old man who suffers from a combination of medical conditions, including hypertension [and] hyperlipidemia" was at "heightened risk if he were to contract COVID-19." *Id.* at *2. The court held that "the COVID-19 pandemic, coupled with Defendant's physical and medical condition and the conditions at Defendant's prison facility [FCI Fort Dix] provide 'extraordinary and compelling reasons' for reducing his sentence." *Id.* Recently, a district judge in the S.D.N.Y. held that "[c]onditions at [FCI Fort Dix] appear to present serious risks of both spread of the virus and inadequate medical care for those who have been infected." *United States v. Tazewell*, 2021 WL 21980, at *6 (S.D.N.Y. Jan. 3, 2021) (quoting *United States v. Rodriguez*, 2020 WL 7640539, at *4 (S.D.N.Y. Dec. 23, 2020)). As noted, the COVID-19 situation is much better at FCI Fort Dix in the past few weeks. Also, in addition, Defendant tested positive for the virus in late December 2020. He indicated he was asymptomatic and has now returned to the general population.

However, considering the totality of Defendant's circumstances, the Court finds that compassionate release is not appropriate under 18 U.S.C. § 3553(a).

**III. 18 U.S.C. § 3553(a) Factors**

Even when a defendant is statutorily eligible for a sentence reduction based on an "extraordinary and compelling reason," compassionate release is not necessarily appropriate. The Court must weigh the sentencing factors in 18 U.S.C. § 3553(a) to determine whether Defendant's sentence should be reduced. *Willis*, 382 F.Supp.3d at 1188. Pursuant to § 3553(a), a court imposing a sentence shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for [the applicable offense category as set forth in the guidelines];
>
> (5) any pertinent policy statement . . . by the Sentencing Commission;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

In consideration of the sentencing factors set forth in 18 U.S.C. § 3553(a), the Court finds that compassionate release is not appropriate in this case. Here, the "nature and circumstances" of Defendant's crimes weigh against relief. Defendant was sentenced to 120 months imprisonment for selling 28.548 grams of heroin, 47.386 grams of crack cocaine, and a shotgun to a confidential informant. [DN 40 at 2]. Notably, Defendant has two prior convictions, one for gang related violence in 1999 and another for drug trafficking in 2010. [DN 40]. Thus, his criminal history qualified him for Career Offender status. Currently, Defendant has served approximately 45 months of his 120-month sentence, or around 37 percent. Moreover, the government points to the fact that the BOP assigned Defendant a pattern score of 'High," and cites to Defendant's criminal history and the severity of the committed offenses to argue that "one cannot conclude that Sublett 'is not a danger to the safety of any other person or the community.'" [DN 51 at 5]. Accordingly, the Court finds that Defendant's pre-confinement "history and characteristics" do not support relief; and reducing his sentence would minimize the nature and seriousness of the offense and would fail to afford adequate deterrence to criminal conduct.

The Court recognizes the severity of the novel coronavirus and its increasing risk in the United States. There is no doubt that the dangers of COVID-19 are exacerbated by the prison environment. *United States v. Herring*, No. 6:14-cr-00008-GFVT-CJS, 2020 WL 6886256, at *4 (E.D. Ky. Nov. 24, 2020). However, even though Defendant presented "extraordinary and compelling" reasons for a sentence reduction, the Court cannot find that compassionate release would be appropriate under § 3582(c)(1)(A) in this case. Granting Defendant compassionate release when he has served only 37 percent of his sentence would lead to unwarranted sentence disparities and would be unjust in light of the seriousness of his crimes. Additionally, after considering the totality of Defendant's circumstances, offense conduct, and criminal history, the

Court cannot conclude that Defendant would not pose "a danger to the safety of any other person or to the community," U.S.S.G. § 1B1.13(2).

Probation recently investigated Defendant's home placement and proposed release plan. In their report, Probation indicated that with some modifications, there would be a place for Defendant to stay upon release. [DN 59]. However, the Court still believes that compassionate release it not appropriate under § 3553(a). Therefore, Defendant's Motion for Compassionate Release in Light of COVID-19, [DN 45], must be DENIED.

**IV. Appointment of Counsel**

Finally, Defendant requests that the Court appoint counsel. [DN 56]. However, as there is no general constitutional right to appointed counsel in post-conviction proceedings, Defendant's request will be denied. *United States v. Clark*, No. 3:09-CR-90-CRS, 2020 WL 3977652 at *4 (W.D. Ky. July 14, 2020). Moreover, "[n]o constitutional or statutory right to counsel exists for filing motions under 18 U.S.C. § 3582." *United States v. Clark*, No. 6:07-013-DCR, 2019 WL 7161209, at *2 (E.D. Ky. Feb. 14, 2019) (citing *United States v. Webb*, 565 F.3d 789 (11th Cir. 2009) (collecting cases)). Instead, the decision to appoint counsel lies within the Court's discretion but doing so is unnecessary where the issues raised in a § 3582 motion "are straightforward and resolvable upon review of the record." *Id.* The Court finds that appointment of counsel is not necessary for Defendant to pursue compassionate release in this case. Here, the issues raised in Defendant's motion concerning a sentence modification are straightforward and resolvable upon a review of the record. The Court finds that the nature of Defendant's motion demonstrates that he has the capacity and the means to effectively set forth the facts, claims, and argument necessary to pursue this § 3582 action without the assistance of counsel. Thus, Defendant's motion for appointment of counsel, [DN 56], is DENIED.

## CONCLUSION

For the above stated reasons, **IT IS HEREBY ORDERED** that Defendant Alando Sublett's Motion for Compassionate Release in Light of COVID-19, [DN 45], is **DENIED**, and Defendant's Motion to Appoint Counsel, [DN 56], is **DENIED AS MOOT.**

    **IT IS SO ORDERED.**

*Thomas B. Russell*

**Thomas B. Russell, Senior Judge**
**United States District Court**

April 1, 2021

CC: **Alando Sublett**
18301-033
FORT DIX
FEDERAL CORRECTIONAL INSTITUTION
Inmate Mail/Parcels
EAST: P.O. BOX 2000 – WEST: P.O. BOX 7000
FORT DIX, NJ 08640
PRO SE